FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y
★ FEB 1 3 2012 ★
BROOKLYN OFFICE

**UNITED STATES DISTRICT COURT**
**FOR THE**
**EASTERN DISTRICT OF NEW YORK**

CV12-000742

| | |
|---|---|
| BELINDA HILLS, | ) |
| Plaintiff, | ) |
| | ) Case No.: |
| v. | ) |
| | ) COMPLAINT AND DEMAND FOR JURY TRIAL |
| PORTFOLIO RECOVERY ASSOCIATES, LLC, | ) |
| | ) (Unlawful Debt Collection Practices) |
| Defendant | ) |

BIANCO, J.

BOYLE, M.J.

## COMPLAINT

BELINDA HILLS ("Plaintiff"), by her attorneys, KIMMEL & SILVERMAN, P.C., alleges the following against PORTFOLIO RECOVERY ASSOCIATES, LLC, ("Defendant"):

### INTRODUCTION

1. Plaintiff's Complaint is based on the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA").

### JURISDICTION AND VENUE

2. Jurisdiction of this court arises pursuant to 15 U.S.C. § 1692k(d), which states that such actions may be brought and heard before "any appropriate United States district court without regard to the amount in controversy;" 28 U.S.C. § 1331 grants this court original jurisdiction of all civil actions arising under the laws of the United States; and 28 U.S.C. § 1367 grants this Court supplemental jurisdiction over any state law claims.

3. Defendant conducts business and maintains an office in the State of New York, therefore, personal jurisdiction is established.

4. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2).

## PARTIES

5. Plaintiff is a natural person residing in Queens, New York.

6. Plaintiff is a "consumer" as that term is defined by 15 U.S.C. § 1692a(3).

7. Defendant is a national debt collection company with corporate headquarters located at 120 Corporate Boulevard, Norfolk, Virginia 23502.

8. Defendant is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6).

9. Defendant acted through its agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

## FACTUAL ALLEGATIONS

10. At all relevant times, Defendant was attempting to collect a debt Plaintiff allegedly owed for a motor vehicle purchase.

11. The alleged debt that Defendant was seeking to collect from Plaintiff arose out of transactions, which were primarily for personal, family, or household purposes, as Plaintiff has no business debts.

12. Beginning in or around the summer of 2011 and continuing through October 2011, Defendant's representatives placed repeated harassing debt collection calls to Plaintiff's cellular and work telephone numbers seeking to collect this alleged debt.

13. Defendant's harassing debt collection calls originated from numbers including, but not limited to (800) 772-1413. The undersigned has confirmed that this number belongs to Defendant.

14. Defendant often placed two to three telephone calls to Plaintiff's cellular telephone in a single day.

15. Plaintiff never provided her cellular telephone number to any creditor or debt collector, and never authorized any creditor or debt collector to use this number to contact her.

16. On one occasion, in or around October 2011, Plaintiff inquired of Defendant how it obtained her cellular telephone number; in response a female representative rudely told Plaintiff that this was none of her business, and stated in a threatening tone that regardless of Plaintiff's financial or personal circumstances, Plaintiff "is going to pay this debt!"

17. Plaintiff told Defendant's representatives on numerous occasions that she did not owe this debt, and explained the circumstances giving rise to this alleged debt.

18. Plaintiff told Defendant's representatives on several occasions that she never signed documentation giving rise to the debt that Defendant was seeking to collect.

19. Specifically, Plaintiff advised Defendant's representatives that she had purchased a Lincoln Town Car from a dealership in South Carolina, and when she went to pick up the Town Car they gave her a Pontiac Bonneville and forged her signature to documentation for the purchase of the Bonneville; after learning the dealership would not provide her with the Town Car she actually purchased, Plaintiff returned the Bonneville.

20. On one occasion, when Plaintiff disputed owing the debt, Defendant's representative told Plaintiff that she would "pay the debt one way or another."

21. On various occasions, Defendant's representatives called Plaintiff's cellular telephone immediately after Plaintiff hung up.

22. Defendant has also contacted Plaintiff at inconvenient times.

23. Plaintiff regularly attends church on a Sunday morning, and has advised Defendant that Sunday mornings are not convenient times to contact her.

24. Despite this, Defendant has contacted Plaintiff prior to her leaving for church on a Sunday morning.

25. When Plaintiff advised that this was not a convenient time for her to speak, Defendant's representative pushed Plaintiff to continue the conversation and make immediate payment on the debt.

26. In addition, Defendant has contacted Plaintiff at her place of employment.

27. Plaintiff is a nurse attending to seven quadriplegic children, and part of her job requires the monitoring of feeding and breathing tubes.

28. Due to the serious nature of her position, Plaintiff is not permitted to receive personal calls of any nature at her place of employment.

29. When Defendant contacted Plaintiff at her place of employment, Plaintiff had to request another nurse monitor her patients' room, while at the same time monitoring the room the other nurse was already assigned to monitor.

30. Plaintiff was then forced to take Defendant's collection call at a nursing station with another nurse present.

31. Plaintiff advised Defendant that it was not convenient for her to receive calls at her place of employment due to the nature of her position, and further, that such calls were not permissible.

32. Defendant's representative did not care that Plaintiff was not permitted to receive calls of this nature at work or that Plaintiff worked with quadriplegic children and needed to return to them, and instead pushed Plaintiff to pay the alleged debt.

33. Because Defendant's representative was pushy and did not heed Plaintiff's indication that she could not speak because she was caring for ill children, the children were left without Plaintiff's care for several minutes, placing their health and well-being at risk.

34. As a result of Defendant's frequent calls, and its failure to understand that Plaintiff did not owe this debt, Plaintiff repeatedly requested that Defendant cease calling her.

35. However, Defendant ignored this request and continued calling Plaintiff seeking to collect this debt she did not owe.

36. Plaintiff found these repeated harassing telephone calls to be both frustrating and annoying as she did not owe this debt and with knowledge of this Defendant persisted in its efforts to collect this debt from her.

20. Since Plaintiff repeatedly advised Defendant that she did not owe this debt and advised them to cease communication with her, Defendant could only have taken the actions described herein with the intent to harass, abuse, and coerce Plaintiff into paying an alleged debt that Plaintiff denies owing.

## COUNT I
## DEFENDANT VIOLATED THE FAIR DEBT COLLECTION PRACTICES ACT
## 15 U.S.C. §1692 et. seq.

21. In its actions to collect a disputed debt, Defendant violated the FDCPA in one or more of the following ways:

    a. Contacting Plaintiff at a place or time that it knew was inconvenient for Plaintiff, in violation of 15 U.S.C.§1692c(a)(1);

    b. Contacting Plaintiff at her place of employment with reason to know such conduct is prohibited, in violation of 15 U.S.C.§1692c(a)(3);

    c. Harassing, oppressing or abusing Plaintiff in connection with the collection of a debt, by calling Plaintiff repetitively, in violation of 15 U.S.C.§1692d;

    d. When it caused the Plaintiff' telephone to ring repeatedly or continuously with the intent to harass, annoy or abuse Plaintiff, in violation of 15 U.S.C. §1692d(5);

    e. Using false, deceptive, or misleading representations or means in connection

with the collection a debt, in violation of 15 U.S.C. §1692e;

  f. Misrepresenting the character, amount, or legal status of Plaintiff's debt in violation of 15 U.S.C. § 1692e(2)(A);

  g. Using misrepresentations or deceptive means to collect a debt in violation of 15 U.S.C. § 1692e(10);

  h. Using unfair or unconscionable means to collect or attempt to collect any debt, in violation of 15 U.S.C. §1692f; and

  i. Collecting an amount not expressly authorized by agreement between the parties or by law in violation of 15 U.S.C. §1692f(1).

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, BELINDA HILLS, respectfully prays for a judgment as follows:

  a. All actual compensatory damages suffered pursuant to 15 U.S.C. § 1692k(a)(1);

  b. Statutory damages of $1,000.00 for the violation of the FDCPA pursuant to 15 U.S.C. § 1692k(a)(2)(A);

  c. All reasonable attorneys' fees, witness fees, court costs and other litigation costs incurred by Plaintiff pursuant to 15 U.S.C. § 1693k(a)(3);

  d. Any other relief deemed appropriate by this Honorable Court.

**DEMAND FOR JURY TRIAL**

PLEASE TAKE NOTICE that Plaintiff, BELINDA HILLS, demands a jury trial in this case.

1
2
3
4
5
6
7

DATED: 02/07/12

KIMMEL & SILVERMAN, P.C.

By: _____
   Craig Thor Kimmel
    Attorney ID # 2790038
   Attorney for Plaintiff
   Kimmel & Silverman, P.C.
   30 E. Butler Pike
   Ambler, PA 19002
   Phone: (215) 540-8888
   Fax: (877)788-2864
   Email: kimmel@creditlaw.com